# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL MCCLENTON,  :
 Plaintiff     :
          :  No. 1:19-cv-1958
 v.        :
          :  (Judge Rambo)
JANE DOE (1) MS. RYAN, *et al.*, :
 Defendants    :

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment (Doc. No. 24) filed by Defendants Jane Doe 1 Ms. Ryan ("Ryan"), Jane Doe 2 Ms. Wadsworth ("Wadsworth"), John Doe 3 Mr. Roberts ("Roberts"), John Doe 4 Mr. Cavenas ("Cavenas"), Jane Doe 5 C. Stanitis ("Stanitis") and John Doe 6 Mr. Gutsie ("Gutsie"). Plaintiff has filed neither a response to the motion nor a motion seeking an extension of time to do so. Accordingly, because the time for filing a response has expired, Defendants' motion for summary judgment is ripe for disposition.

## I. BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI Mahanoy"), initiated the above-captioned action on November 14, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants. (Doc. No. 1.) Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. No. 2.) In an Order dated November 21, 2019, the Court denied Plaintiff's motion for leave to proceed *in forma pauperis* because

Plaintiff had not demonstrated an inability to pay the requisite $400.00 filing fee. (Doc. No. 11.)  Plaintiff paid the filing fee on December 19, 2020, and the Court directed service of his complaint upon Defendants.  (Doc. Nos. 13, 14.)  Defendants filed an answer on February 18, 2020 (Doc. No. 18), and the parties subsequently engaged in discovery.  In an Order dated October 5, 2020, the Court directed the parties to file any dispositive motions within sixty (60) days.  (Doc. No. 23.)

In his complaint, Plaintiff alleges that he was working on the food service line on July 21, 2017 when Defendant Ryan stated, "If I start calling y'all out of your names then y'all want to . . . [sensitive] and write a grievance on me!  Don't look at me like you don't know what I'm talking about McClenton."  (Doc. No. 1 ¶ 10.) Plaintiff alleges that this outburst "was in direct response to a grievance submitted by inmate Prince," and that Defendant Ryan had "received information that [P]laintiff had encouraged and assisted Prince with preparing his grievance against her." (*Id.* ¶¶ 11-12.)

On July 22, 2017, Plaintiff had just returned to his cell from the recreation yard when his block officer told him that Defendant Ryan had called to say that Plaintiff was not to return to work.  (*Id.* ¶ 14.)  Plaintiff was "laid in (not called to work)" without pay from July 23-27, 2017.  (*Id.* ¶ 15.)  He was called back to work on July 28, 2017.  (*Id.* ¶ 16.)  Plaintiff approached Defendant Cavenas and asked to

speak to Defendant Roberts about Defendant Ryan's actions.  (*Id.* ¶ 17.)  Defendant Cavenas, in Defendant Ryan's presence, told Defendant Roberts that Plaintiff "has an issue with Defendant Ryan and wished to speak to him in his office."  (*Id.* ¶ 18.) Plaintiff went to Defendant Roberts' office and asked why Defendant Ryan had called his block officer and "laid [him] in [on] July 22, 2017."  (*Id.* ¶ 20.)  Defendant Roberts replied, "Word on the compound is you meet with inmates in the yard and help then write grievances against kitchen staff."  (*Id.* ¶ 21.)  Plaintiff asked who had called the block to tell him to return to work.  (*Id.* ¶ 22.)  Defendant Roberts replied that he did not know, but that if Plaintiff was willing to "squash it" he could get Defendant Ryan so that she and Plaintiff could talk.  (*Id.* ¶ 23.)  Plaintiff told Defendant Roberts that Defendant Ryan was apparently upset about the grievance submitted by inmate Prince.  (*Id.* ¶ 24.)

On July 29, 2017, Defendant Cavenas removed Plaintiff from the food service line and "essentially demoted him to a table wiper in the kitchen."  (*Id.* ¶ 25.)  On August 2, 2017, Plaintiff heard Defendant Wadsworth tell another inmate that Plaintiff would be wiping tables every day since he "likes to complain and help you guys file grievances."  (*Id.* ¶ 26.)  Plaintiff maintains that from August 2-5, 2017, Defendant Wadsworth conspired with the kitchen steward to retaliate against Plaintiff "by way of removing him from the kitchen food service line and demoting

him to a table wiper." (*Id.* ¶ 27.)  Plaintiff alleges that Defendant Ryan also demoted him to a table wiper on August 6, 9, and 10, 2017.  (*Id.* ¶ 28.)

On August 10, 2017, Plaintiff filed grievance #691907.  (*Id.* ¶ 29.)  On August 15, 2017, Defendant Stanitis was assigned as the grievance officer.  (*Id.* ¶ 30.)  On August 16, 2017, Plaintiff worked the food service line for lunch, but Defendant Cavenas removed him from the line and demoted him to a table wiper for dinner.  (*Id.* ¶¶ 31-32.)  After completing work, Plaintiff approached Defendant Cavenas to be pat searched.  (*Id.* ¶ 33.)  He asked Defendant Cavenas why he had been removed from the food service line for dinner, and Defendant Cavenas replied that it was because of Plaintiff's grievance.  (*Id.* ¶ 34.)  Plaintiff responded, "That's retaliation. I'm writing you up!"  (*Id.* ¶ 35.)  Plaintiff alleges that after he expressed his intent to file a grievance, Defendant Ryan yelled, "What did he just say?  I can't take him anymore.  This has been going on for weeks.  Call Supervisor Roberts and tell him to call security."  (*Id.* ¶ 38.)  Plaintiff asserts that because of his statement, he was "essentially fired and told not to come back to work by his housing unit officers when he arrived back to his housing unit."  (*Id.* ¶ 36.)

On August 28, 2017, Defendant Stanitis called Plaintiff to the kitchen to interview him about grievance #691907.  (*Id.* ¶ 40.)  Defendant Stanitis, in Defendant Gutsie's presence, told Plaintiff that "inmates and staff alike in the

4

kitchen did not want to work with him because he 'complaints to[o] much about staff.'" (*Id.* ¶ 41.)   Defendant Stanitis asked about Plaintiff's work status, and Defendant Gutsie replied that Plaintiff was pending a support hearing.  (*Id.* ¶ 42.) Defendant Stanitis "asked to see Defendant Roberts['] report and while reviewing it she laughed." (*Id.* ¶ 43.)   Defendant Stanitis told Plaintiff that if he withdrew his grievance, she could get him a job in the C.I. shop or allow him to come back to work and reassign him to the food service line.  (*Id.* ¶ 44.)  Plaintiff "refused to withdraw his grievance." (*Id.* ¶ 45.)   While leaving the office, Defendant Gutsie "urged Plaintiff to withdraw his grievance," otherwise "they'll make sure he won't get any job and won't get paid." (*Id.* ¶ 47.)  Plaintiff asserts that he has been jobless for over two (2) years and that SCI Mahanoy's employment office cannot assign him to a new job because he "has been awaiting a unit management team support hearing for over 2 years." (*Id.* ¶¶ 48-49.)

Based on the foregoing, Plaintiff alleges that Defendants violated his First Amendment rights by retaliating against him.  (*Id.* ¶¶ 52-86, 94-100, 117-23.)  He maintains further that Defendants Cavenas and Ryan and Defendants Stanitis and Gutsie conspired to violate his civil rights.  (*Id.* ¶¶ 87-93, 109-16.)  Finally, Plaintiff asserts that Defendant Gutsie violated his rights by failing to intervene to stop

Defendant Stanitis from retaliating against him.  (*Id.* ¶¶ 101-08.)  Plaintiff requests

declaratory relief as well as damages.  (*Id.* ¶ 124.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary

judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[T]his standard provides that the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would

affect the outcome of the case under applicable substantive law.  *Id.* at 248; *Gray v.*

*York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material

fact is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United*

*Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court

must view the facts and all reasonable inferences in favor of the nonmoving party.

*Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963

F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White*,

826 F.2d at 59.  In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.* (citations omitted).  However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[1]

Beginning in October of 2015, Plaintiff was employed in the food service department at SCI Mahanoy.  (Doc. No. 25 ¶ 2.)  His employment there "was a challenge from the start."  (*Id.* ¶ 3.)  Plaintiff "asked other inmates to call him 'Corleone as if [he] were the God Father' and other inmate reported to prison staff that they did not want to work with Plaintiff."  (*Id.* ¶ 4.)

On July 29, 2017, Defendant Cavenas, who was a steward in the food service department, "removed Plaintiff from the food service line and asked Plaintiff to wipe tables."  (*Id.* ¶ 5.)  Plaintiff did not want to wipe tables "and believed that the request to wipe tables was a 'demotion.'"  (*Id.* ¶ 6.)  On August 10, 2017, "Plaintiff filed grievance 691907 in which he alleged that he was ordered to wipe tables in

---

[1] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.*  Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts.  (Doc. No. 25.)  Plaintiff did not file a response to Defendants' statement of facts in compliance with Local Rule 56.1.  Moreover, Plaintiff's complaint is not verified and, therefore, may not be treated as an affidavit in opposition to summary judgment.  *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)").  Accordingly, the Court deems the facts set forth by Defendants to be undisputed.  *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

retaliation for assisting other inmates in filing grievances." (*Id.* ¶ 7.)  On August 18, 2017, Plaintiff was suspended from the food service department pending further action because he was "acting aggressively as well as trying to intimidate staff by staring and making loud grunting like noises toward staff."   (*Id.* ¶ 8.) Notwithstanding this conduct, Defendant Stanitis, the food service manager, met with Plaintiff on August 28, 2017 "and told Plaintiff he could resume employment in the food service department."  (*Id.* ¶ 9.)  "Plaintiff declined to resume his employment."  (*Id.* ¶ 10.)

## IV.   DISCUSSION

Defendants assert that they are entitled to summary judgment because: (1) Defendants Cavenas, Wadsworth, and Ryan are entitled to summary judgment on Plaintiff's first three (3) counts of retaliation; and (2) there is no evidence that any Defendant took sufficient adverse action.  (Doc. No. 26 at 4-6.)  The Court considers these arguments below.

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*,

229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link."  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

11

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

## A.    Protected Activity

The filing of grievances constitutes protected activity. *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011). Verbal complaints constitute protected activity, as well. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 297-99 (3d Cir. 2016); *Brewer v. Kamas*, 533 F. Supp. 2d 318, 329 (W.D.N.Y. 2008) (citing *Smith v. Woods*, No. 9:03-cv-480, 2006 WL 1133247, at *10 (N.D.N.Y. 2006); *Davila-Bajana v. Holohan*, No. 04-253 Erie, 2007 WL 2811633, at *5 (W.D. Pa. Sept. 24, 2007) (assuming that an inmate-plaintiff's verbal complaints were constitutionally protected activity). Defendants Cavenas, Wadsworth, and Ryan assert that they are entitled to qualified immunity on Plaintiff's first three counts of retaliation because they are "based on allegations that they asked Plaintiff to wipe tables after learning that he was assisting other inmates in filing grievances," and

12

that there is no Supreme Court or Third Circuit precedent suggesting that such activity is protected speech.  (Doc. No. 26 at 5.)  The Court considers this argument below.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *See Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011).  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity."  *Id.*  Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *See al-Kidd*, 563 U.S. at 741.  As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's

allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *See Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in *White v. Pauly*, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard.  In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."[2]  *See id.* at 551 (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  *See id.* at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As an initial matter, Defendants have too narrowly construed Plaintiff's first three counts of retaliation set forth in his complaint.  In those counts, Plaintiff alleges

---

[2] There may be the rare "obvious case," however, where "a body of case law" is not necessary. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

14

that Defendants Cavenas, Wadsworth, and Ryan not only retaliated against him by demoting him to a table wiper for not only encouraging and assisting other inmates with filing grievances, but also for lodging verbal complaints about Defendant Ryan's actions with Defendant Roberts.  (Doc. No. 1 ¶¶ 52-72.)  As noted above, Plaintiff's verbal complaints constitute protected speech.  *See Mack*, 839 F.3d at 297-99.  Thus, to the extent Plaintiff's first three counts of retaliation are based upon his verbal complaints, Defendants Cavenas, Wadsworth, and Ryan are not entitled to qualified immunity.

The Court, however, concludes that Defendants Cavenas, Wadsworth, and Ryan are entitled to qualified immunity to the extent that Plaintiff asserts that they retaliated against him for encouraging and assisting other inmates with filing grievances.  In 2016, this Court recognized that it was not clearly established that advising or encouraging another inmate to file a grievance is protected speech.  *See Mobley v. Snyder*, No. 1:13-cv-772, 2016 WL 3387178, at *8 (M.D. Pa. June 20, 2016).  Moreover, prisoners generally "do not have a First Amendment right to provide legal assistance to other prisoners."  *Cooper v. Pa. Dep't of Corr.*, 756 F. App'x 130, 133 (3d Cir. 2018).  The Court recognizes that in May of 2017, the Third Circuit held that legal assistance provided by one inmate to another "was both pursuant to [the plaintiff's] job duties [at the prison] and in accordance with prison

regulations, [and] was not inconsistent with legitimate penological interests," such assistance "could fall within the limited First Amendment rights that prisoners retain." *Wisniewski v. Fisher*, 857 F.3d 152, 156-57 (3d Cir. 2017).  In the instant case, however, there is no evidence before the Court suggesting that Plaintiff's job duties involved the provision of legal assistance or assistance with preparing grievances to other inmates.  Thus, "because the existing precedent did not place the constitutional question of whether [Plaintiff] engaged in constitutionally protected speech [by encouraging and assisting other inmates in filing grievances] beyond debate," Defendants Cavenas, Ryan, and Wadsworth are entitled to partial qualified immunity.  *Mobley*, 2016 WL 3387178, at *8.  Thus, the motion for summary judgment will be granted to the extent that Plaintiff asserts that Defendants Cavenas, Ryan, and Wadsworth retaliated against him for encouraging and assisting other in filing grievances.

### B.   Adverse Action

To be actionable under § 1983, the adverse action "need not be great" but "must be more than *de minimus*."  *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).  The Third Circuit has recognized that, for purposes of a retaliation claim, "an action which on its own would not violate the Constitution could be actionable if motivated by retaliation."  *Collazo v. Rozum*, 646 F. App'x 274, 276 n.5 (3d Cir.

16

2016).   Defendants argue that they are entitled to summary judgment because Plaintiff cannot satisfy this element.  (Doc. No. 26 at 6.)  Specifically, they maintain that wiping tables was part of Plaintiff's job in the food service department, and that "the temporary suspension of Plaintiff's employment was not an adverse action sufficient to deter a person of ordinary firmness [from] exercising his constitutional rights."  (*Id.*)

The Court agrees that Plaintiff's "demotion" to wiping tables is not an adverse action sufficient to satisfy the second prong of a retaliation claim.   Plaintiff confirmed during his deposition that wiping table is part of the duties of food service. (Doc. No. 25-1 at 10; *see also* Doc. No. 25-2 at 1.)[3]  Nothing in the record before the Court suggests that such a "demotion" was "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."  *Rauser*, 241 F.3d at 333 (internal quotation marks omitted); *see also Schilling v. Loredo*, No. 17-cv-4054, 2019 WL 2247787, at *12 (N.D. Cal. May 24, 2019) (suggesting that inmate-

---

[3] The Court notes that counsel for Defendants deposed Plaintiff via videoconference on August 18, 2020.  (Doc. No. 25-1 at 2.)  Rule 30(a)(2)(B) of the Federal Rules of Civil Procedure requires that leave of court be obtained prior to deposing an individual who is incarcerated.  *See* Fed. R. Civ. P. 30(a)(2)(B).  In the instant case, counsel for Defendants did not seek leave of this Court to depose Plaintiff.  It appears, however, that Plaintiff has not objected to this failure.  Moreover, the failure to obtain such leave would not automatically entitle Plaintiff to relief on his claims.  *See Irish v. U.S. Dep't of Justice*, No. 11-2703, 2015 WL 1178072, at *21 (D. Minn. Mar. 13, 2015). The Court reminds counsel that, in the future, he must seek such leave in any matters in which he wishes to depose an incarcerated individual.

plaintiff's demotion to another position within the prison's furniture factor was insufficient to establish adverse action); *cf. Verbanik v. Harlow*, No. 09-448, 2012 WL 4378198, at *3 (W.D. Pa. Sept. 25, 2012) (concluding that an inmate-plaintiff's "housing demotion" was insufficient to satisfy the adverse action prong). Moreover, as noted *supra*, Plaintiff was suspended from work without pay from July 23-27, 2017. (Doc. No. 1 ¶ 15.) The Court agrees with Defendants that this "single, temporary inconvenience does not meet the standard." *See Walker v. Mathis*, 665 F. App'x 140, 143 (3d Cir. 2016) (concluding that inmate-plaintiff's two (2)-day suspension from work assignment without pay was insufficient to meet the adverse action prong of a retaliation claim).

Plaintiff also maintains that Defendants Cavenas and Ryan retaliated against him for filing grievances by fabricating threat allegations and placing negative comments regarding his work performance in his file, ultimately leading to his removal from the kitchen. (Doc. No. 1 ¶ 82.) Plaintiff suggests that Defendant Roberts instructed Defendants Cavenas and Ryan to take these actions. (*Id.* ¶ 119.) Plaintiff maintains further that Defendant Stanitis retaliated against him by forcing him to choose between withdrawing his grievance or returning to work, and that Defendant Gutsie failed to intervene to stop Defendant Stanitis' actions. (*Id.* ¶¶ 96,

98, 104.)   Defendants have not specifically addressed these allegations in their motion for summary judgment.

The Third Circuit has recognized that "the termination of prison employment constitutes adverse action sufficient to deter the exercise of First Amendment rights, satisfying the second element of a retaliation claim." *Wisniewski*, 857 F.3d at 157. Moreover, threatening an inmate with unpleasant consequences unless he agrees to withdraw a grievance or complaint is sufficient to constitute adverse action. *See, e.g.*, *Williams v. Lee*, No. 1:19-cv-41, 2020 WL 5704272, at *5 (W.D. Pa. Sept. 24, 2020); *Wrigley v. Peters*, No. 3:18-cv-135, 2020 WL 4207066, at *1 (D. Nev. July 22, 2020); *Sharpe v. Costello*, No. 1:06-cv-1493, 2007 WL 1098964, at *6 (M.D. Pa. Apr. 11, 2007).   During his deposition, Plaintiff testified that, contrary to Defendants' assertions, he never acted aggressively or attempted to intimidate kitchen staff. (Doc. No. 25-1 at 14.)  Plaintiff testified further that Defendant Stanitis indicated that he could resume employment in the food service department if he "signed off on" (withdrew) his grievance.  (*Id.* at 13-15.)  Plaintiff indicated that he was given the choice of withdrawing the grievance and continuing to be employed or having no job at all.  (*Id.* at 14.)  Similar "Hobson's choices" have been presumed to constitute sufficient adverse action for purposes of a retaliation claim.  *See Johnson v. Piper*, No. 2:14-cv-173-RWS-JCF, 2017 WL 11493976, at *7-8 (N.D.

Ga. Aug. 25, 2017) (assuming that being provided the "Hobson's choice" of "confinement in Max-Iso or separation from his legal materials" was adverse action").

In light of the evidence, it is the Court's view that there are genuine issues of material fact as to whether certain actions (fabricating threat allegations, placing negative comments in Plaintiff's work file, and offering a choice between employment and withdrawing his grievance) constitute adverse action sufficient to satisfy the second element of a retaliation claim. As noted *supra*, Defendants have not addressed these allegations. Notably, Defendants have not submitted affidavits in support of their motion for summary judgment. Defendants have also not addressed whether such actions are causally connected to Plaintiff's grievance. Such issues of fact will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage. *See Anderson*, 477 U.S. at 25. Thus, the Court will deny Defendants' motion for summary judgment as to Plaintiff's claims that Defendants retaliated against him by fabricating threat allegations, placing negative comments in his work file, and offering a choice between continued employment and withdrawing his grievance.[4]

---

[4] Plaintiff also alleges that Defendants Cavenas and Ryan, as well as Defendants Stanitis and Gutsie, conspired to violate his civil rights. (Doc. No. 1 ¶¶ 87-93, 109-16.) To maintain an action for civil conspiracy under § 1983, a plaintiff must "prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of*

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 24) will be granted in part and denied in part.  The motion (Doc. No. 24) will be granted with respect to: (1) Plaintiff's claims that Defendants Cavenas, Ryan, and Wadsworth retaliated against him for encouraging and assisting other inmates with filing grievances; (2) Plaintiff's claims that Defendants Cavenas, Ryan, and Wadsworth retaliated against him by "demoting" him to a table wiper and temporarily suspending him from his work assignment; and (3) Plaintiff's conspiracy claims against Defendants Cavenas, Ryan, Stanitis, and Gutsie.  The motion (Doc. No. 24) will be denied with respect to Plaintiff's claims that Defendants Cavenas, Ryan, Roberts, Stanitis, and Gutsie retaliated against him for

---

*Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  Moreover, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred."  *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992).  The plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives."  *Id.*  A plaintiff cannot rely on subjective suspicions and unsupported speculation.  *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).  Moreover, "to successfully counter a motion for summary judgment, a plaintiff must provide specific evidence establishing that defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose."  *Payne v. Gordon*, 3:17-cv-1230, 2018 WL 3649026, at *11 (M.D. Pa. Aug. 1, 2018).  Here, Plaintiff ha failed to introduce into the record any evidence which shows an agreement or plan created and executed by Defendants that rises to the level of a conspiracy.  Without such, Plaintiff's conspiracy claims amount to nothing more than mere conjecture and bare speculation, which is not sufficient to demonstrate a genuine issue of fact as to the existence of an agreement designed to deny his constitutional rights.  *See Young*, 926 F.2d at 1405 n.16.  Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's conspiracy claims.

filing grievances by fabricating threat allegations, placing negative comments in his work file, and offering a choice between continued employment and withdrawing his grievance.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: January 12, 2021