**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL MCCLENTON,      :
    Plaintiff          :
                        :     **No. 1:19-cv-1958**
      v.             :
                        :     **(Judge Rambo)**
JANE DOE (1) MS. RYAN, *et al.*,  :
    Defendants     :

## MEMORANDUM

This matter is before the Court pursuant to Defendants' motion for reconsideration (Doc. No. 30) of the Court's January 12, 2021 Memorandum and Order (Doc. Nos. 27, 28) granting in part and denying in part their motion for summary judgment. Plaintiff has filed a brief in opposition. (Doc. No. 32.) Defendants have not filed a reply, and the time period for doing so has expired. Accordingly, Defendants' motion (Doc. No. 30) is ripe for disposition.

## I.  BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI Mahanoy"), initiated the above-captioned action on November 14, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Ryan, Wadsworth, Roberts, Cavenas, Stanitis, and Gutsie. (Doc. No. 1.) In his complaint, Plaintiff alleged that he was working on the food service line on July 21, 2017 when Defendant Ryan stated, "If I start calling y'all out of your names then y'all want to . . . [sensitive] and write a grievance on

me!  Don't look at me like you don't know what I'm talking about McClenton."
(Doc. No. 1 ¶ 10.)  Plaintiff alleged that this outburst "was in direct response to a
grievance submitted by inmate Prince," and that Defendant Ryan had "received
information that [P]laintiff had encouraged and assisted Prince with preparing his
grievance against her."  (*Id.* ¶¶ 11-12.)

On July 22, 2017, Plaintiff had just returned to his cell from the recreation
yard when his block officer told him that Defendant Ryan had called to say that
Plaintiff was not to return to work.  (*Id.* ¶ 14.)  Plaintiff was "laid in (not called to
work)" without pay from July 23-27, 2017.  (*Id.* ¶ 15.)  He was called back to work
on July 28, 2017.  (*Id.* ¶ 16.)  Plaintiff approached Defendant Cavenas and asked to
speak to Defendant Roberts about Defendant Ryan's actions.  (*Id.* ¶ 17.)  Defendant
Cavenas, in Defendant Ryan's presence, told Defendant Roberts that Plaintiff "has
an issue with Defendant Ryan and wished to speak to him in his office."  (*Id.* ¶ 18.)
Plaintiff went to Defendant Roberts' office and asked why Defendant Ryan had
called his block officer and "laid [him] in [on] July 22, 2017."  (*Id.* ¶ 20.)  Defendant
Roberts replied, "Word on the compound is you meet with inmates in the yard and
help then write grievances against kitchen staff."  (*Id.* ¶ 21.)  Plaintiff asked who had
called the block to tell him to return to work.  (*Id.* ¶ 22.)  Defendant Roberts replied
that he did not know, but that if Plaintiff was willing to "squash it" he could get

Defendant Ryan so that she and Plaintiff could talk.  (*Id.* ¶ 23.)  Plaintiff told Defendant Roberts that Defendant Ryan was apparently upset about the grievance submitted by inmate Prince.  (*Id.* ¶ 24.)

On July 29, 2017, Defendant Cavenas removed Plaintiff from the food service line and "essentially demoted him to a table wiper in the kitchen."  (*Id.* ¶ 25.)  On August 2, 2017, Plaintiff heard Defendant Wadsworth tell another inmate that Plaintiff would be wiping tables every day since he "likes to complain and help you guys file grievances."  (*Id.* ¶ 26.)  Plaintiff maintained that from August 2-5, 2017, Defendant Wadsworth conspired with the kitchen steward to retaliate against Plaintiff "by way of removing him from the kitchen food service line and demoting him to a table wiper."  (*Id.* ¶ 27.)  Plaintiff alleged that Defendant Ryan also demoted him to a table wiper on August 6, 9, and 10, 2017.  (*Id.* ¶ 28.)

On August 10, 2017, Plaintiff filed grievance #691907.  (*Id.* ¶ 29.)  On August 15, 2017, Defendant Stanitis was assigned as the grievance officer.  (*Id.* ¶ 30.)  On August 16, 2017, Plaintiff worked the food service line for lunch, but Defendant Cavenas removed him from the line and demoted him to a table wiper for dinner.  (*Id.* ¶¶ 31-32.)  After completing work, Plaintiff approached Defendant Cavenas to be pat searched.  (*Id.* ¶ 33.)  He asked Defendant Cavenas why he had been removed from the food service line for dinner, and Defendant Cavenas replied that it was

3

because of Plaintiff's grievance. (*Id.* ¶ 34.) Plaintiff responded, "That's retaliation. I'm writing you up!" (*Id.* ¶ 35.) Plaintiff alleged that after he expressed his intent to file a grievance, Defendant Ryan yelled, "What did he just say? I can't take him anymore. This has been going on for weeks. Call Supervisor Roberts and tell him to call security." (*Id.* ¶ 38.) Plaintiff asserted that because of his statement, he was "essentially fired and told not to come back to work by his housing unit officers when he arrived back to his housing unit." (*Id.* ¶ 36.)

On August 28, 2017, Defendant Stanitis called Plaintiff to the kitchen to interview him about grievance #691907. (*Id.* ¶ 40.) Defendant Stanitis, in Defendant Gutsie's presence, told Plaintiff that "inmates and staff alike in the kitchen did not want to work with him because he 'complaints to[o] much about staff.'" (*Id.* ¶ 41.) Defendant Stanitis asked about Plaintiff's work status, and Defendant Gutsie replied that Plaintiff was pending a support hearing. (*Id.* ¶ 42.) Defendant Stanitis "asked to see Defendant Roberts['] report and while reviewing it she laughed." (*Id.* ¶ 43.) Defendant Stanitis told Plaintiff that if he withdrew his grievance, she could get him a job in the C.I. shop or allow him to come back to work and reassign him to the food service line. (*Id.* ¶ 44.) Plaintiff "refused to withdraw his grievance." (*Id.* ¶ 45.) While leaving the office, Defendant Gutsie "urged Plaintiff to withdraw his grievance," otherwise "they'll make sure he won't

get any job and won't get paid." (*Id.* ¶ 47.)  Plaintiff asserted that he has been jobless for over two (2) years and that SCI Mahanoy's employment office cannot assign him to a new job because he "has been awaiting a unit management team support hearing for over 2 years." (*Id.* ¶¶ 48-49.)

Based on the foregoing, Plaintiff alleged that Defendants violated his First Amendment rights by retaliating against him. (*Id.* ¶¶ 52-86, 94-100, 117-23.) He maintained further that Defendants Cavenas and Ryan and Defendants Stanitis and Gutsie conspired to violate his civil rights. (*Id.* ¶¶ 87-93, 109-16.) Finally, Plaintiff asserted that Defendant Gutsie violated his rights by failing to intervene to stop Defendant Stanitis from retaliating against him. (*Id.* ¶¶ 101-08.) Plaintiff requested declaratory relief as well as damages. (*Id.* ¶ 124.)

Defendants filed a motion for summary judgment and supporting materials on December 1, 2020. (Doc. Nos. 24, 25, 26.) Plaintiff did not oppose the motion. Accordingly, the Court deemed the facts set forth by Defendants in their statement of facts to be undisputed. (Doc. No. 27 at 9 n.1.) On January 12, 2021, the Court granted in part and denied in part Defendants' motion for summary judgment. (Doc. Nos. 27, 28.) Specifically, the Court granted the motion with respect to: (1) Plaintiff's claims that Defendants Cavenas, Ryan, and Wadsworth retaliated against him for encouraging and assisting other inmates with filing grievances; (3)

Plaintiff's claims that Defendants Cavenas, Ryan, and Wadsworth retaliated against him by "demoting" him to a table wiper and temporarily suspending him from his work assignment; and (3) Plaintiff's conspiracy claims against Defendants Cavenas, Ryan, Stanitis, and Gutsie. (Doc. No. 28.) The Court denied the motion with respect to Plaintiff's claims that Defendants Cavenas, Ryan, Roberts, Stanitis, and Gutsie retaliated against him for filing grievances by fabricating threat allegations, placing negative comments in his work file, and offering a choice between continued employment and withdrawing his grievance. (*Id.*) The Court referred the matter to the Court's Prisoner Litigation Settlement Program for mediation. (*Id.*)

Defendants filed a motion for reconsideration (Doc. No. 30) and brief in support thereof (Doc. No. 31) on January 26, 2021. Defendants assert that the Court's partial denial of summary judgment "was based on two clear errors of fact: (i) that Plaintiff had been terminated from his prison employment in the kitchen and (ii) that Plaintiff had testified during his deposition that he was offered a choice between continued employment in the kitchen and withdrawing a grievance." (Doc. No. 30 at 2.) Defendants argue that there is no admissible evidence in the record to support such conclusions. (*Id.*) In response, Plaintiff avers that he never received a copy of Defendants' motion for summary judgment or a copy of the transcript of his

deposition.  (Doc. No. 32 at 1-2.)  Plaintiff includes seven (7) exhibits with his response, including a copy of Grievance #695397.

## II.   DISCUSSION

As noted *supra*, the Court's January 12, 2021 Memorandum and Order did not dispose of all of Plaintiff's claims for relief.  Accordingly, Defendants seek reconsideration of an interlocutory ruling, not a final judgment or order.  While reconsideration of a final judgment or order may be considered under Federal Rules of Civil Procedure 59(e) or 60(b), "the appropriate Rule under which to file motions for reconsideration of an interlocutory order is Rule 54(b)."  *Cezair v. JP Morgan Chase Bank N.A.*, No. 13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014); *see also Qazizadeh v. Pinnacle Health Sys.*, 241 F. Supp. 3d 292, 298 (M.D. Pa. 2016) (noting that "motions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)").  Rule 54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

A motion for reconsideration with respect to a final order or judgment must rely on one (1) of three (3) grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).  The purpose of such a motion is "to correct manifest errors of law or fact or to present newly discovered evidence." *Bootay v. KBR, Inc.*, 437 F. App'x 140, 146-47 (3d Cir. 2011) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).  To be successful, the movant must demonstrate a "definite and firm conviction that a mistake has been committed," or that the court overlooked arguments that were previously made.  *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003).  "It may not be used as a means to reargue unsuccessful theories or argue new facts or issues that were not presented to the court in the context of the matter previously decided." *Gray v. Wakefield*, No. 3:09-cv-979, 2014 WL 2526619, at *2 (M.D. Pa. June 4, 2014); *see also Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's

8

burden.'").

"While the standards articulated [above] are not binding in an analysis of Rule 54(b) motions, courts frequently look to these standards for guidance in considering such motions." *Ampro Computers, Inc. v. LXE, LLC*, No. 13-1937, 2016 WL 3703129, at *2 (D. Del. July 8, 2016) (quoting *Cezair*, 2014 WL 4955535, at *1). Reconsideration of interlocutory orders, however, "may be had even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the 'need to correct a clear error of law or fact to prevent manifest injustice.'" *Qazizadeh*, 214 F. Supp. 3d at 298 (quoting *Quinteros*, 176 F.3d at 677). "[T]he court may permit reconsideration whenever 'consonant with justice to do so.'" *Id.* (quoting *St. Mary's Area Water Auth. v. St. Paul Fire and Marine Ins. Co.*, 472 F. Supp. 2d 630, 632 (M.D. Pa. 2007)). Courts, however, should exercise this authority with a "light hand." *Foster v. Westchester Fire Ins. Co.*, No. 09-1459, 2012 WL 2402895, at *4 (W.D. Pa. June 26, 2012). The United States Court of Appeals for the Third Circuit has explained that while "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest

9

injustice." *In re Pharmacy Benefit Managers*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

Defendants argue that their motion "should be granted to correct two clear errors of fact underlying the Court's Order denying in part Defendants' motion for summary judgment." (Doc. No. 31 at 2.) Defendants first assert that the Court erred in determining that Plaintiff had been terminated from his prison employment. (*Id.* at 2-4.) They maintain that the "undisputed facts show that Plaintiff was temporarily suspended from his employment in the kitchen for ten (10) days." (*Id.* at 3.) They assert further that "even if Defendants had retaliated against Plaintiff by fabricating threat allegations and placing negative comments in his work file, the retaliation only led to the suspension of Plaintiff's prison employment for 10 days." (*Id.*)

The Court agrees with Defendants that a temporary suspension of prison employment is not sufficient to meet the adverse action prong of a retaliation claim. *See Walker v. Mathis*, 665 F. App'x 140, 143 (3d Cir. 2016). The issue, however, is that Plaintiff has presented evidence, attached to his response to Defendants' motion, suggesting that he was removed from the Food Service Department and that he has not worked since because he has not received an inmate support team hearing. (Doc. No. 32-1.) Given this, the Court concludes that it did not clearly err in indicating that Plaintiff was terminated from his employment in the kitchen because there are

10

genuine issues of material fact as to whether this occurred.  *Cf. Watson v. Wetzel*, No. 11-281J, 2013 WL 501376, at *8 (W.D. Pa. Jan. 9, 2013) ("[T]he refusal to reinstate a prisoner into his prison job may be sufficient to deter a prisoner of ordinary firmness from exercising his constitutional rights."), *Report and Recommendation adopted*, 2013 WL 504712 (W.D. Pa. Feb. 8, 2013), *aff'd sub nom. Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75 (3d Cir. 2014).

Defendants also suggest that the Court erred by determining that Plaintiff was offered a choice between continued employment and withdrawing his grievance. (Doc. No. 31 at 4-7.)  Defendants argue that the Court made this determination based on Plaintiff's deposition testimony but that the testimony does not reflect this determination.  (*Id.*)  They assert that there is "no admissible evidence in the record that Plaintiff was offered a choice between withdrawing his grievance and continuing his employment."  (*Id.* at 7.)  The Court disagrees.  During his deposition, Plaintiff testified that he was told that if he did not take his job in the kitchen back, that he would get nothing.  (Doc. No. 25-1 at 13-15.)  Moreover, in the grievances Plaintiff attaches to his response, he suggested that Defendant Gutsie told him that Defendant Stanitis did not really want to process his grievances and that he should take the offered job.  (Doc. No. 32-1 at 6.)  Plaintiff also indicates that Defendant Gutsie stated that Plaintiff did not take the job, he would "not get anything."  (*Id.*)

11

In sum, after considering Defendants' motion for reconsideration and Plaintiff's response thereto, the Court concludes that it did not clearly err in its determination that there are genuine issues of material fact that precluded summary judgment as to Plaintiff's claims that Defendants retaliated against him by fabricating threat allegations, placing negative comments in his work file, and offering a choice between continued employment and withdrawing his grievance. Defendants' motion for reconsideration, therefore, will be denied.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration (Doc. No. 30) will be denied.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: March 8, 2021

12